Kim BAILEY

v.

CITY OF NEW ORLEANS, et als.

Civ. A. No. 81-2051.

United States District Court,
E. D. Louisiana.

Jan. 29, 1982.

Harry A. Burglass, Metairie, La., for plaintiff.

Avis Marie Russell, New Orleans, La., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

#### Findings of Fact

1. Plaintiff in this action is Kim Marie Bailey, who, at the time of the incident giving rise to this action, was eighteen years old.

2. Defendants in this action are the City of New Orleans, the New Orleans Police Department, and Juan Louis Curet, an officer with the New Orleans Police Department. At the time of the subject incident, Officer Curet had been with the police force for about nine years.

3. On November 20, 1980, at approximately 3:15 p. m., Officer Curet was traveling alone in his police car on Patterson Drive which runs parallel to and alongside of the Mississippi River levee in Algiers. Officer Curet noticed someone riding what appeared to be a small motorcycle along the top of the levee in the opposite direction coming toward him. The biker was wearing a full face helmet and, therefore, not recognizable to Officer Curet. Noting that riding a motorbike or motorcycle on the top of the levee was unlawful, Officer Curet stopped his car and attempted to signal the biker to stop by turning on his flashing blue light and by calling out over his public address system. Believing that the biker on the levee had noted his presence and had intentionally disregarded his signals, Officer Curet turned his car around and headed after the biker who continued riding along the top of the levee and, at times, on the batture side of the levee causing the biker to be out of Curet's line of sight.

4. The biker was later identified as Kim Bailey, plaintiff in this action. The vehicle she was riding was a dirt bike, designed for off-road pleasure riding. It is almost identical in appearance to a small motorcycle. Bailey acknowledged that she had been warned by a policeman on an earlier occasion that it was unlawful to ride her bike along the top of the levee.

5. Officer Curet continued along Patterson Drive for approximately a mile, still attempting to signal plaintiff to stop. He knew that a fence cut across the levee near the intersection of Richland Road and Patterson Drive and realized that he could stop the biker if he arrived first at the fence. Curet drove up onto the levee, and got out of his car to wait for the biker to reach him there.

6. Kim Bailey arrived shortly thereafter and stopped her bike near Curet's car.

7. Officer Curet walked up to Bailey who was standing straddling the dirt bike and still wearing her helmet. Curet asked to see her operator's permit for the bike. When Bailey responded that she did not have a license with her, Officer Curet told her that she was under arrest.

8. The verbal and physical exchanges which then took place between Kim Bailey and Officer Curet leading to her being handcuffed and placed in the police car will not be recounted in detail. I find that Bailey refused to cooperate and, in some distress, began calling for her mother. At the same time, she resisted Curet's grasp on her arm by struggling and kicking. Curet, while holding Bailey's arm behind her back, moved her away from the inclined area of the levee over to his police car where he pushed her over and against the hood in order to restrain her while placing her in handcuffs. Bailey attempted to free herself from the grip Curet had on her arm by twisting around toward him and kicking. Bailey's helmet came off at some point during this physical exchange. Curet tried to regain control by turning Bailey back around to face the car by using his hand on her arm and by using his other hand to hold her by the hair at the back of her head. At the same time, Curet used his body weight and his hand on her head to push Bailey over and against the front hood of the car. During this struggle to put Bailey in handcuffs, Curet caused the front left area of Bailey's head to hit the car's hood. Curet, while in the process of attempting to handcuff Bailey, also asked for assistance over his car radio.

9. Officer Curet opened the right rear door of the police car with the intent of placing Bailey onto the back seat. About this time, Officer Jerry Faulkner drove another police car up onto the levee (with Officer Lucien Roussell) in answer to Curet's call for help.

10. Though Kim Bailey testified that she did not resist Officer Curet's attempts to arrest and handcuff her, she acknowledged that she became very upset during the episode. The evidence compels a finding that she did refuse to cooperate with the arrest procedure and did, thereafter, resist arrest.

11. Curet drove Bailey to the Fourth District Police Station. As she got out of Curet's police car, she told Curet that her knee was hurting her. As Curet assisted Bailey while she limped into the station, Michael Barron, Kim Bailey's boyfriend, approached them, presumably to find out if Bailey was hurt. Curet responded quite loudly and cursed at Barron, telling him to move away. From the testimony given by Officer Dwight Dean, who was at the police station when Curet and Bailey arrived, and substantiated by others present (Barron, Alvin Scott, as well as Curet and Bailey), it is apparent that both Curet and Bailey were each contributing to what became a very high noise level outside and in the police station. Curet was yelling, rather loudly, that he had been kicked and was hurt. At the same time, Bailey was crying and was vocalizing her disapproval of the entire situation.

12. Bailey was charged with riding a motorcycle on a levee, failing to have a driver's license, resisting arrest and simple battery on an arresting officer.

13. Because of her complaints about her knee, Bailey was taken to New Orleans' Jo Ellen Smith Hospital at approximately 3:55 p. m., where she was examined and x-rays were taken of her knee. The hospital report indicates that the left front side of her head was tender, as was her right knee, and that she had a laceration of her right big toe. Bailey also claimed that her head was sore from having her hair pulled. Bailey testified at trial under cross-examination that she had originally injured her right knee in 1976 while horseback riding.

14. Thereafter, Bailey was taken from the hospital to Central Lockup and, at approximately 6:45 p. m., she was placed in confinement at Central Lockup. Plaintiff remained there until approximately 10:00 p. m., at which time she was released on bond.

15. Plaintiff did not go to work on the following day because her knee was still sore. Plaintiff received no subsequent medical treatment for her alleged injuries.

16. Bailey and Curet did not know each other prior to this incident.

### Conclusions of Law

1. This court has jurisdiction under 28 U.S.C. § 1343.

2. Plaintiff seeks damages arising from her arrest and confinement alleging that Officer Curet, individually and as agent for the New Orleans Police Department, and the City of New Orleans violated her civil rights under 42 U.S.C. § 1983 by arresting her without cause and with excessive force, and by causing her to be imprisoned without justification. Plaintiff further alleges that the acts of defendants were so wanton and unnecessarily violent as to warrant a claim for punitive damages and attorney fees.[1]

3. Defendants deny plaintiff's allegations and assert that Officer Curet acted in accordance with his duties as a police officer and that any injuries sustained by plaintiff resulted from her own actions in resisting the legal commands of a police officer.

4. It is now well settled that the civil rights statute upon which plaintiff bases her claim is not a general tort statute. Rather, it imposes liability only for deprivation of rights secured by the Constitution and laws of the United States, and not for violations of duties of care arising out of tort law. *Baker v. McCollan*, 443 U.S. 137, 138 and 146, 99 S.Ct. 2689, 2691 and 2695, 61 L.Ed.2d 433 (1979); *Shillingford v. Holmes*, 634 F.2d 263, 264 (5th Cir. 1981).

5. Whether the above described actions of Officer Curet amount to a constitutional violation that would make plaintiff's arrest and confinement actionable under § 1983 must be determined by the reasonableness of the force in light of the need, the motivation, and the extent of the injury inflicted. *Roberts v. Marino*, 656 F.2d 1112, 1114 (5th Cir. 1981); *Shillingford v. Holmes*, *supra*, 634 F.2d at 265.

6. From the moment Officer Curet attempted to place Bailey under arrest, the verbal and physical exchanges between them escalated. Curet met plaintiff's refusal to be arrested by grasping her arm to remove her from the bike. Curet then met plaintiff's attempts to free herself from his grip by holding her arm behind her back, and by using his police car as a support against which he could handcuff her. When plaintiff further struggled by turning toward Curet, he met her resistance by turning her around and forcing her against the hood of the police car. Every act of resistance by plaintiff required Curet to exert greater force to retain control of the situation.

7. Curet's actions were commensurate with plaintiff's increased resistance and therefore reasonable in light of the existing need.

8. I note that the shouting episode which occurred at the police station, involving both plaintiff and Officer Curet, reveals that neither party was viewing the situation from a completely calm and objective perspective. I do not find, however, that Officer Curet's arrest of plaintiff was motivated by anything other than proper performance of his duties. Louisiana law prohibits riding or driving upon the levees and authorizes a fine or imprisonment for violations. LSA–R.S. 38:213.

9. Having reviewed the reasonableness of the force exerted, and the motivation therefor, what remains to be examined under constitutional tort analysis is the severity of the injury suffered by plaintiff. Without minimizing the physical discomfort felt by plaintiff at the time of her arrest, it is important to note that her injuries required neither medication nor subsequent medical treatment. Plaintiff's actual confinement lasted less than three and one-half hours.

10. I conclude on the basis of the foregoing that Officer Curet did not misuse

---

1. Plaintiff's complaint alleges, without specifics, that defendants acted in violation of 42 U.S.C. § 1981. Inasmuch as plaintiff, a white female, has failed to set forth any grounds for a claim that she has been denied equal protection of the law on the basis of her race or sex, I will determine the merits of this case solely on the basis of § 1983.

his authority so as "to transcend the bound of ordinary tort law and establish a deprivation of constitutional rights." *Shillingford v. Holmes, supra,* 634 F.2d at 266. Therefore, plaintiff's claim against defendant Curet must fail.

11. Inasmuch as defendants New Orleans Police Department and City of New Orleans could not have been held liable under a theory of respondeat superior, *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978), and inasmuch as plaintiff has asserted no constitutional claim directly against these defendants, plaintiff's claim against the City and the Police Department must also fail.

Counsel for defendants is directed to prepare and submit a judgment that is consistent with these findings and conclusions.